UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

EUGENE KUROCHKIN,

              Defendant.

------------------------------------X

13 Cr. 853 (RWS)

SENTENCING OPINION

**Sweet, D.J.**


On November 1, 2013, Eugene Kurochkin ("Defendant" or "Kurochkin") pled guilty to Count 1: Distributing and Possessing With the Intent to Distribute Amphetamine, Alprazolam, and Zolpidem, in violation of 21 U.S.C. § 841(b)(1)(C), a Class C felony, and Count 2: Distributing and Possessing With the Intent to Distribute Oxycodone and Zolpidem, in violation of 21 U.S.C. § 841(b)(1)(C), a Class C felony. For the reasons set forth below, Defendant will be sentenced to a term of 12 months' imprisonment to be followed by three years' supervised release. Defendant will also be required to pay a special assessment of $200.

1

**Prior Proceedings**

Defendant was named in a two-count Indictment 12 CR 853 (RWS) in the Southern District of New York. Count 1 charges that on January 18, 2013, in the Southern District of New York and elsewhere, Defendant and others distributed and possessed with intent to distribute Amphetamine, Alprazolam, and Zolpidem, Schedule II and IV controlled substances. Count 2 charges that on January 25, 2013, in the Southern District of New York and elsewhere, Defendant and others distributed and possessed with intent to distribute Oxycodone and Zolpidem, Schedule II and IV controlled substances.

On November 1, 2013, Defendant appeared before the Honorable Michael H. Dolinger and allocuted to his criminal conduct as charged, pursuant to a written plea agreement. The plea was accepted by this Court on November 18, 2013.

Defendant's sentencing is scheduled for February 11, 2014.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in

2

United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

>     (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>     (2)   the need for the sentence imposed —
>
>         (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>         (B)   to afford adequate deterrence to criminal conduct;
>
>         (C)   to protect the public from further crimes of the defendant; and
>
>         (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>     (3)   the kinds of sentences available;
>
>     (4)   the kinds of sentence and the sentencing range established for —
>
>         (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
>     (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];
>
>     (6)   the need to avoid unwarranted sentence disparities among defendants with similar

3

records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.


**The Defendant**


The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.


**The Offense Conduct**


The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.


In January 2013, the Federal Bureau of Investigation ("FBI") began investigating the illegal distribution of legitimately manufactured pharmaceuticals including amphetamine,

4

alprazolam, zolpidem, and oxycodone. This investigation involved
the use of surveillance, the use of a confidential source
("CS"), and the consensual recordings of telephone conversations
and meetings. During the course of this investigation, agents
discovered that Defendant was involved in the illegal
distribution of pharmaceuticals.

On January 16, 2013, while under the direction of law
enforcement officials, the CS arranged by telephone to buy
Adderall from an individual named "Eugene," who was later
identified as Defendant.

On January 18, 2013, the CS and Defendant exchanged a
series of text messages during which they discussed the fact
that Defendant was going to provide the CS with Adderall and
Xanax (alprazolam). Later that same day, the CS met with
Defendant at the CS' apartment in New York, NY. Prior to their
meeting, agents provided the CS with a hidden recording device.
During this meeting, Defendant provided the CS with 84 Adderall
pills, 30 Xanax pills, and nine Ambien pills in exchange for
$528 cash. Shortly after Defendant left the CS' apartment, he
contacted the CS to arrange another transaction. Defendant
informed the CS that he expected to receive between 75 and 100
oxycodone pills in the near future.

On January 25, 2013, while again wearing a hidden recording device, the CS met with Defendant at his apartment. During this meeting, Defendant provided the CS with 75 oxycodone pills and 20 Ambien pills in exchange for $1,125 cash.

Defendant was arrested on July 11, 2013. During the life of his offense, Defendant is responsible for distributing 75 30-milligram pills of oxycodone (Suboxone), 84 30-milligram pills of amphetamine (Adderall), 30 pills of alprazolam (Xanax), and 29 pills of zolpidem (Ambien).

**The Relevant Statutory Provisions**

For Counts 1 and 2, the maximum term of imprisonment is 20 years, per count, pursuant to 21 U.S.C. § 841(b)(1)(C).

For Counts 1 and 2, if a sentence of imprisonment is imposed, a term of at least three years' supervised release up to life is required pursuant to 21 U.S.C. § 841(b)(1)(C). Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Counts 1 and 2, the Defendant is eligible for not

6

less than one nor more than five years' probation by statute, per count, pursuant to 18 U.S.C. § 3561(c)(1).

For Counts 1 and 2, the maximum fine is $1 million, per count, pursuant to 21 U.S.C. § 846. A special assessment of $200 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2013 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

Counts 1 and 2 are grouped pursuant to § 3D1.2(d) because the offense level is determined largely on the total amount of controlled substances involved in this offense. Count 1 charges Defendant with Distributing and Possessing With Intent to Distribute Amphetamine, Alprazolam, and Zolpidem, a violation of 21 U.S.C. § 841(b)(1)(C). Count 2 charges Defendant with Distributing and Possessing With Intent to Distribute Oxycodone and Zolpidem, a violation of 21 U.S.C. § 841(b)(1)(C).

7

The guideline for a violation of 21 U.S.C. § 841(b)(1)(C), is found in § 2D1.1. According to the Offense Conduct section, the Defendant's criminal activity involved possessing with intent to distribute 75 30-milligrams of oxycodone, which is the equivalent of 15.075 kilograms of marijuana; 84 30-milligram pills of amphetamine, which is the equivalent of 50.4 kilograms of marijuana; 30 pills of alprazolam, which is the equivalent of 1.875 grams of marijuana; and 29 pills of zolpidem, which is the equivalent of 1.812 grams of marijuana. This amounts to a combined total of 65.477 kilograms of marijuana. Accordingly, the offense level specified in the Drug Quantity Table under § 2D1.1(c)(9), sets a base offense level of 22.

Based on the Defendant's plea allocution, the Defendant has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the offense is reduced three levels.

Accordingly, the total offense level is 19.

8

The Defendant has several prior convictions.

On December 13, 2007, Defendant pled guilty to Disorderly Conduct in the Queens Criminal Court in Queens, New York. Defendant was sentenced to conditional discharge. Pursuant to § 4A1.2(c)(1), this conviction warrants zero criminal history points.

On June 21, 2013, Defendant pled guilty to Disorderly Conduct in the Brooklyn Criminal Court in Brooklyn, New York. On the same day, Defendant was sentenced conditional discharge and two days' community service. Pursuant to § 4A1.2(c)(1), this conviction warrants zero criminal history points.

The criminal convictions above result in a total criminal history score of zero. According to the sentencing table at Chapter 5, Part A, zero criminal history points establish a Criminal History Category of I.

Based on a total offense level of 19 and a Criminal History Category of I, the Guideline range for imprisonment is 30 to 37 months.

9

The Guideline range for a term of supervised release is three years, the minimum required by statute, pursuant to § 5D1.2(c).

Because the applicable Guideline range is in Zone D of the Sentencing Table, the Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note #2.

The fine range for the instant offense is from $6,000 to $2,000,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4)(A). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

The Defendant admits to the forfeiture allegation and agrees to forfeit to the U.S., pursuant to 21 U.S.C. § 853 a sum of money, representing the gross proceeds received by the Defendant in connection with his narcotics trafficking activities alleged in Counts 1 and 2. Pursuant to Rule 32.2,

10

"[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the Defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

Because this case involves several controlled substances, the particular substances are converted into marijuana equivalents pursuant to § 2D1.1, Application Note

11

8(B). According to the conversion tables, the substances sold by Defendant are converted into the following marijuana equivalents:

- 84 pills of amphetamine (30mg) (Adderall) = 50.4 kg of marijuana.

- 75 pills of oxycodone (30 mg) (Suboxone) = 15.075 kg marijuana.

- 30 pills of alprazolam (Xanax) = 1.875 grams of marijuana.

- 29 pills of Zolpidem (Ambien) = 1.812 grams of marijuana.

The total amount of marijuana for which Defendant is accountable is 65.477 kg, which translates into an offense level of 22 (60-80 kg). See § 2D1.1(c)(9). The 84 pills of Adderall sold are the driving force behind the offense level of 22.

Adderall is the combination of dextroamphetamine and amphetamine and is used as part of a treatment program to control symptoms of attention deficit hyperactivity disorder ("ADHD") in adults and children. It is also used to treat narcolepsy. See Reyna v. Weber, No. Civ. 11-4044, 2012 WL

12

2999768, at *10 n.24 (D.S.D. June 29, 2012).

Before the summer of 2001, the Federal Sentencing Guidelines drug conversion table converted one gram of amphetamine to 200 grams of marijuana. Accordingly, the 2.5 grams of amphetamine contained in Adderall here would have constituted 0.5 kg of marijuana, an offense level of 8. In 2000, in response to a surge in the usage of methamphetamine, Congress passed the Methamphetamine Anti-Proliferation Act of 2000, Pub. L. 106-310. Based on this statute, the Sentencing Commission enacted emergency amendment that placed amphetamine at the same level as methamphetamine, with 1 gram of amphetamine equal to 2000 grams of marijuana, and created a new category of "actual" amphetamine equal to 20,000 grams of marijuana, one hundred times what it had been before. Eventually, this language became Amendment Number 610 to the Guidelines.

The Commission explained its increases for amphetamine as follows:

> Reason for Amendment: This emergency amendment implements the directive in the Methamphetamine Anti-Proliferation Act of 2000, section 3611 of Pub. L. 106-310 (the "Act"), which directs the Commission to provide, under emergency amendment authority, increased guideline penalties for amphetamine such that those penalties are comparable to the base

13

offense level for methamphetamine. This amendment
revises §2D 1.1 to include amphetamine in the Drug
Quantity Table. This amendment also treats amphetamine
and methamphetamine identically, at a 1:1 ratio (i.e.,
the same quantities of amphetamine and methamphetamine
would result in the same base offense level) because
of the similarities of the two substances.
Specifically, amphetamine and methamphetamine (1)
chemically are similar; (2) are produced by a similar
method and are trafficked in a similar manner; (3)
share similar methods of use; (4) affect the same
parts of the brain; and (5) have similar intoxicating
effects. The amendment also distinguishes between pure
amphetamine (i.e., amphetamine (actual)) and
amphetamine mixture in the same manner, and at the
same quantities, as pure methamphetamine (i.e.,
methamphetamine (actual)) and methamphetamine mixture,
respectively. The amendment reflects the view that the
1:1 ratio is appropriate given the seriousness of
these controlled substances.

Federal Register Notice of Amendments to the Sentencing
Guidelines for United States Courts, 66 Fed. Reg. 30,511 (June
6, 2001); see also U.S. Sentencing Commission News Release,
March 1, 2001.


          The Commission's factual basis for the amendment is
inapposite as it relates to Adderall. Adderall is not "produced
by a similar method and [] trafficked in a similar manner" as
methamphetamine, which is produced illegally in underground labs
and generally has no lawful purposes. Adderall does not "share
similar methods of use" with methamphetamine, which produces a
heightened sense of well-being or euphoria akin to cocaine, and

14

generally is not used for medical purposes.[1] Adderall serves as a treatment for ADHD, and non-prescribe usage is often by students who use Adderall to "enhance" their ability to study and a competitive advantage.[2]

The Guidelines' determination of that one <u>gram</u> of Adderall equates to 20 <u>kilograms</u> of marijuana produces a "disproportionately harsh" sentencing guideline for Defendant, and does not property reflect § 3553 considerations. Given such, if the court used the previous Federal Sentencing Guidelines drug conversion table, which treated one gram of amphetamine to 200 grams of marijuana, then the 2.5 grams of amphetamines here would constitute 0.5 kg of marijuana, which would lead to a total amount of marijuana equivalent of 15.6 kg. This would constitute an offense level of 16, which, adjusting for Defendant's recognition of responsibility for the offense, would result in a total offense level of 13. Based on a total offense level of 13 and a Criminal History Category of I, the Guideline range for imprisonment would be 12 to 18 months.

Two Eastern District of New York cases have previously addressed sentencing for the possession or distribution of

---

[1] Treatment Improvement Protocol (TIP) Series, No. 33., Center for Substance Abuse Treatment (1999), http://www.ncbi.nlm.nih.gov/books/NBK64328/.
[2] <u>See, e.g.</u>, Margaret Talbot, <u>Brain Gain: The Underground World of 'Neuro-enhancing' Drugs</u>, THE NEW YORKER, April 27, 2009.

Adderall. In United States v. Wiltshire, 11 CR 164 (DLI), the defendant was charged with conspiracy to distribute and possess with intent to distribute Adderall and was accountable for 1031 Adderall pills for a total weight of 30.9 grams of pure amphetamine. The defendant faced a guideline range of 57-71 months. 11 CR 164 (DLI), ECF No. 28 (April 9, 2012). The Honorable Dora L. Irizarry sentenced Ms. Wiltshire to Time Served, six months of home confinement and five years of supervised release. 11 CR 164 (DLI), ECF No. 35 (May 10, 2012). In United States v. Gabriel, 10 CR 588 (JBW), the defendant was also charged with conspiracy to distribute and possess with intent to distribute Adderall. 10 CR 588 (JBW), ECF No. 59 (July 3, 2012). The Honorable Jack B. Weinstein sentenced Mr. Gabriel to time served and three years supervised release. Id.

With regards to the Defendant, Kurochkin has suffered severe anxiety and ADHD from the age of fifteen; in 2010, Defendant met the diagnostic criteria for mood disorder not otherwise specified, major depressive disorder rule out, anxiety disorder not otherwise specified and attention deficit disorder. Sentencing Submission by Eugene Kurochkin, 13 CR 853, ECF No. 21, Ex. A. Defendant currently suffers from depressive, anxiety and ADHD symptoms. Id. Defendant has been prescribed several drugs for his symptoms, including Adderall, Xanax, Ambien and

16

Suboxone. According to the PSR, Defendant has abused drugs on and off since he was fourteen years old. Defendant has made several attempts to enroll in an inpatient drug treatment program prior to his arrest, but was denied entry because of insurance coverage issues and his use of Suboxone. The drugs Defendant sold were allegedly lawfully prescribed to Defendant. Id. at 2, 6-7.

Defendant was receiving psychotherapy sessions prior to his arrest, indicating that Defendant was interested in receiving psychotherapy and not just getting prescriptions for medications. Subsequent to his arrest, Defendant is now sober.

Having considered all of the factors above, a downward departure from the Guideline sentence is warranted in this case.

**The Sentence**

For the instant offense, Defendant will be sentenced to 12 months' imprisonment to be followed by three years' supervised release.

As mandatory conditions of his supervised release, Defendant shall:

17

(1) Not commit another federal, state or local crime;

(2) Not illegally possess a controlled substance;

(3) Not possess a firearm or destructive device;

(4) Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

The Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The Defendant will be required to contribute to the costs of

18

services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

The Defendant shall participate in a mental health program approved by the U.S. Probation Office. The Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. The Defendant shall contribute to the costs of services rendered not covered by third-party payment, if the Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation

19

Office within 72 hours of release from custody.

        The Defendant shall be supervised by the district of residence.

        A special assessment of $200 is mandatory, pursuant to 18 U.S.C. § 3013.

        Because the Defendant has no assets, no fine is imposed.

        As a result of committing the instant offense, the Defendant shall forfeit to the United States any and all property or proceeds derived from his participation in the offense.

        The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 11, 2014.


It is so ordered.


New York, NY
February ⌐ , 2014

_____
ROBERT W. SWEET
U.S.D.J.

21